UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

DARREGUS ROBINSON,

    Plaintiff,

v.

UNITED STATES OF AMERICA, *et al*.,

    Defendants.

No. 6:21-CV-204-REW

MEMORANDUM OPINION
AND ORDER

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants United States of America, Nurse Privett, Correctional Officer ("CO") J. Cima, Lt. Asher, and Disciplinary Hearing Officer ("DHO") Hughes move to dismiss Plaintiff Darregus Robinson's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* DE 21 (Motion to Dismiss). Robinson has filed a Response, and Defendants have filed their Reply. DE 25 (Response); DE 26 (Reply).[1] Robinson also moves for summary judgment under Federal Rule of Civil Procedure 56, and Defendants have filed a Response. DE 23 (Motion for Summary Judgment); DE 24 (Response). Both motions are ripe for review.

## Background

Robinson claims that, on November 28, 2020, Privett falsely accused him of engaging in a sexual act in violation of disciplinary code 205. *See* DE 1 at 2. Cima then allegedly escorted Robinson, who was handcuffed, to the lieutenant's office and in response to Privett's allegations,

---

[1] As noted by Defendants, *see* DE 26 at 1 n.1, Robinson's Response to Defendants' Motion to Dismiss was untimely, and Robinson provided no explanation for the delay. While Defendants request that the Court strike Robinson's Response from the record, *id*., in light of Robinson's *pro se* prisoner status and the lack of prejudice, the Court denies this request and considers Robinson's Response in its review of Defendants' Motion.

physically assaulted Robinson without provocation. *Id*. According to Robinson, to justify his actions, Cima falsely claimed in the related incident report that Robinson pulled away and was disruptive. *Id*. However, Robinson alleges that Cima's "display of criminal conduct" was actually a "blatant and intentional assault." *Id*. He claims retaliation for the alleged sexual act. DE 1 at 2.

Robinson claims that he was then strapped into a Stryker chair and taken to the Special Housing Unit ("SHU"), where he was restrained while officers dressed him in SHU clothing. *Id.* Robinson states that Asher falsely accused him of resisting, and Robinson was placed into ambulatory restraints against Bureau of Prisons ("BOP") Policy. *Id*. He also alleges that Privett conducted "feigned medical checks" on him during this time. *Id*. at 2–3.

According to Robinson, after he was placed in an isolation cell, Asher, Privett, and five other correctional officers entered the cell, ordered Robinson to lie down on top of a four-point restraint steel bunk, and "proceeded to tighten the handcuffs and belly chain to extremely unbearable degrees at the direction of Lt. Asher." *Id*. at 3. Asher allegedly pulled up on the handcuffs and the belly chain separately, causing Robinson to cry out in pain. *See id.* He claims Asher lifted him above and dropped him onto the steel bunk. *See id.* Robinson claims that camera footage showed Privett, Asher, and other correctional officers laughing at his condition while leaving the cell. *See id*. Privett and another nurse continued conducting "fake medical checks" on him. *Id.* Robinson further alleges that he remained in these "extremely tight" restraints from approximately 8:35 a.m. to 9:00 p.m., and as a result, sustained injuries to his wrist, trunk, shoulder, neck, and lower back. *See id*. at 4. He calls the conduct "criminal acts," DE 1 at 4, and "assault, cruel & unusual punishment, and excessive force," *id.* at 5. As to the claims actually submitted, he labels the "intentional sadistic malicious physical harm" to be in violation of the

2

following:  "My 5th, 6th, and 8th Amendment constitutional rights were violated."  *See id.* at 9.  He cites only these federal constitutional provisions, not state law.

Prior to the disciplinary hearing for his alleged violation of disciplinary code 205, Robinson maintains that he submitted a written statement to Correctional Officer Sasko.  *Id.*.  In the statement, Robinson claimed that Privett's allegations were false; alleged that the use of force against him was in retaliation for these allegations; pleaded "not guilty;" requested a staff representative and witnesses; and submitted questions for his witnesses.  *See id*. at 4.  According to Robinson, Disciplinary Hearing Officer ("DHO") Hughes, who conducted his disciplinary hearing, falsely claimed that Robinson did not submit a statement and that the questions that Robinson submitted for his witnesses were actually cross-examination questions meant for Privett.  *See id.* at 4–5.  He further claims that Hughes ignored and failed to report the staff misconduct of assault, excessive force, and cruel and unusual punishment.  *Id.* at 5.  Robinson states that, in violation of his due process rights, Hughes found him guilty despite camera footage showing that Privett fabricated the whole incident.  *Id.*  Although he appealed this decision, Robinson alleges that his appeals were rejected because they were untimely and submitted on the wrong form.  *See id*. at 5–7.  Robinson claims that the rejection of his appeals were, in reality, a cover up to "prevent [him] from getting justice."  *Id.* at 6.

Based on these allegations, Robinson brings several constitutional and (potentially) tort claims against these individuals and the BOP: Eighth Amendment claims against Privett for deliberate indifference to Robinson's medical needs arising from his allegations that she faked medical checks while he was restrained; Eighth Amendment claims against Privett, Cima, Asher, Hughes, and Norris based on their alleged use of excessive force; Fifth and Sixth Amendment claims against Hughes for denying Robinson due process during his disciplinary hearing; an

3

assault claim against Cima; aiding and abetting assault claims against Privett, Asher, Hughes, and Norris; and a negligence claim against the BOP. *See id.* at 1–2. The tort claims are mere interlineations in the heading; he does not identify tort claims in the section calling for identification of state law rights asserted, and Robinson apparently only included constitutional claims in his FTCA filing. Robinson sues the individual defendants pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 91 S. Ct. 1999 (1971) and the BOP pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. *See generally* DE 1.

After conducting an initial review of Robinson's Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the Court dismissed Robinson's Eighth Amendment excessive force claims against Privett, Hughes, and Norris, and his tort claims against the individual defendants. *See* DE 12 (Screening Order) at 4–5, 7. The Court also found that the United States, rather than the BOP, was the proper defendant for any of Robinson's tort claims and substituted the United States for the BOP. *See id.* at 7–8, 10. However, the Court allowed Robinson to proceed on the following claims: his Eighth Amendment deliberate indifference claim against Privett; his Eighth Amendment excessive force claims against Cima and Asher; his Fifth and Sixth Amendment claims against Hughes; and his tort claims, if any, against the United States. *Id*. at 5, 7–8.

Defendants subsequently moved to dismiss Robinson's Eighth, Fifth, and Sixth Amendment claims under Rule 12(b)(6) for failure to state a claim, and his FTCA claims under Rule 12(b)(1) for lack of jurisdiction. *See* DE 21; DE 21-1 (Memorandum in Support) at 2–3. Robinson also moved for summary judgment, arguing that because the Court construed his factual allegations as true during initial screening, he is entitled to relief on all claims. *See* DE 23 at 2.

## Robinson's Motion for Summary Judgment

Before considering the merits of Defendants' Motion to Dismiss, the Court will first address Robinson's Motion for Summary Judgment, as it is based upon his apparent misunderstanding of a prior Memorandum Opinion and Order entered by the Court. Because Robinson is proceeding in this case *in forma pauperis* and because he is a prisoner seeking redress from a governmental entity and its employees, his Complaint was subject to preliminary review under 28 U.S.C. §§ 1915(e)(2), 1915A. *See* DE 12; *see also* DE 6 (Order Granting IFP Status). These statutes authorize the Court to identify any cognizable claims alleged by a *pro se* prisoner plaintiff and to dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is obviously immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2), 1915A. For purposes of such review, the Court accepts the plaintiff's factual allegations as true. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).

In his Motion for Summary Judgment, Robinson references the Court's prior Memorandum and claims that because the Court accepted his factual allegations on initial screening, he is therefore entitled to relief on all claims. *See* DE 23 at 2. However, the Court's acceptance of Robinson's factual allegations as true on initial screening is *not* a determination that his factual allegations are *actually* true. Rather, because the Court's task on initial review is to determine whether, assuming that a plaintiff's allegations are true, the plaintiff adequately alleges a cognizable legal claim at the case threshold, *see Twombly*, 127 S. Ct. at 1965, Robinson's allegations were merely accepted as true for the limited purpose of the screening analysis and nothing more.

Moreover, as noted by Defendants in their Response, *see* DE 24 at 2, Defendants have not yet answered Robinson's Complaint, choosing instead to file a Motion to Dismiss as allowed under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(4)(a), (b). Nor has discovery occurred. The case remains in the pleading stage as the Court assesses the validity of the presented claims under Rule 12.

Robinson simply misperceives the import of the prior decision. Robinson's Motion for Summary Judgment is premature and procedurally unfounded; the Court denies the Motion.

<u>**Defendants' Motion to Dismiss**</u>

I.      **Rule 12(b)(6) Motion**

   A.      **Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the plaintiff's complaint. *See Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all "well-pleaded facts" in the complaint. *See Twombly*, 127 S. Ct. at 1965; *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Robinson is proceeding without the benefit of an attorney, the Court liberally construes his Complaint. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 437–38 (6th Cir. 2012).

   B.      **Robinson's Constitutional *Bivens* Claims**

Robinson's remaining constitutional claims fall into three categories: (1) an Eighth Amendment claim against Privett arising from allegations that she denied him medical care by "feigning" medical checks on him while he was restrained; (2) Eighth Amendment excessive force claims against Cima and Asher; and (3) Fifth and Sixth Amendment claims against Hughes based on claims that Hughes denied Robinson due process in his prison disciplinary proceedings. *See*

DE 12 at 9–10.  Defendants moves to dismiss Robinson's Eighth, Fifth, and Sixth Amendment claims under Rule 12(b)(6) for failure to state a claim.  *See* DE 21-1 at 2–3.  Specifically, Defendants argue that in light of the Supreme Court's decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), and related Supreme Court authority, this Court should decline to imply a *Bivens* remedy for Robinson's constitutional claims because they arise in new contexts, and special factors counsel against extending *Bivens* to permit these sorts of claims.  *Id.*  Alternatively, even if *Bivens* provided a remedy for Robinson's Fifth and Sixth Amendment claims, *Heck v. Humphrey*, 114 S. Ct. 2364 (1994) bars Robinson's claims against Hughes.  *Id.* at 19–20.

At the outset, the Court notes that Robinson failed entirely to address Defendants' *Bivens* argument.  This failure is not without consequence, as "a plaintiff generally concedes a defense when they fail to respond to the defendant's argument." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019).  Moreover, while the Court liberally construes a *pro se* plaintiff's pleadings, it has no authority to craft arguments that the plaintiff has not made.  *See Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003) ("[P]ro se parties must still brief the issues advanced 'with some effort at developed argumentation.'") (citation omitted).  Thus, Robinson's failure to refute Defendants' arguments does not give the Court license to create counterarguments on his behalf.  *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("'[L]iberal construction does not require a court to conjure allegations on a litigant's behalf.'") (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

Even so, having reviewed the merits of Defendants' arguments, the Court agrees that Robinson's *Bivens* claims are not cognizable in this context.

1.      **The Contours of *Bivens***

Constitutional claims against individual federal officers may be pursued (if at all) pursuant to *Bivens,* which held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. *See Bivens*, 91 S. Ct. at 2005. The *Bivens* remedy is judicially-created and only implied in limited circumstances. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854–55 (2017). Since *Bivens* was decided in 1971, the Supreme Court has recognized a private right of action for damages for a constitutional violation in only three circumstances: (1) where federal officials searched a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 91 S. Ct. at 2005; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 99 S. Ct. 2264, 2279 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 100 S. Ct. 1468, 1474–75 (1980). *See Ziglar*, 137 S. Ct. at 1854–55.

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020); *see also Corr. Servs. Corp. v. Malesko*, 122 S. Ct. 515, 520 (2001) (noting that "[s]ince *Carlson*[,] we have consistently refused to extend *Bivens* to any new context or new category of defendants"). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb"). The Supreme Court's clear directive is that "expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar*, 137 S. Ct. at 1857 (citation and quotation marks omitted); *see also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022)

("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

The Court must employ a two-step test to determine if *Bivens* provides a remedy for alleged misconduct by federal officials. *See Hernandez*, 140 S. Ct. at 743. First, a court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for the application of *Bivens*. *See id.* (citation and quotation marks omitted). Courts interpret broadly whether a claim is presented in a "new context," regarding the context as "'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court].'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859). A difference is "meaningful" if, for example, it involves a different constitutional right, a different category of officers as defendants, a difference in the specificity of the official action, a difference in institutional expertise, or a different risk of judicial intrusion. *Ziglar*, 137 S. Ct. at 1860.

If the Court finds that a claim arises in a new context, the Court then considers whether there are "'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 100 S. Ct. at 1471). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? . . . If there is a rational reason to think that the answer is Congress—as it will be in most every case, . . . no *Bivens* action may lie." *Egbert*, 142 S. Ct. at

1803 (citations and quotation marks omitted); *see also Ziglar*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (citations and quotation marks omitted).

## 2.    Robinson's *Bivens* Claims Arise in a New Context

In this case, each of Robinson's constitutional claims arise in a context that is entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*.

Robinson's Sixth Amendment claim against Hughes most clearly arises in a new context, as neither *Bivens, Davis*, or *Carlson* recognized a private right of action for damages for a violation of the Sixth Amendment.

With respect to Robinson's claim that Hughes violated his due process rights during the disciplinary proceedings, while this claim, like the claim implied in *Davis*, sounds in the Fifth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743.  Thus, just because Robinson's claim implicates the Fifth Amendment does not mean that his claim does not present a new context.  *See Elhady*, 18 F. 4th at 886–87 (declining to extend *Bivens* remedy to a United States citizen alleging that border-patrol officers detained him under conditions that violated his Fifth Amendment due process rights); *Harris v. FBOP*, No. 19-3585, 2020 WL 7586968, at *1–2 (6th Cir. Sept. 22, 2020) (district court did not err in declining to extend *Bivens* remedy to prisoner's "right-to-marry" claim brought under the equal protection component of the Fifth Amendment's due process clause); *Zelaya v. Hammer*, 516 F. Supp. 3d 778, 796 (E.D. Tenn. 2021) (declining to extend a *Bivens* remedy to plaintiffs' equal-protection claim under the Fifth Amendment).

Robinson's Fifth Amendment claim is based upon his allegations that, during his disciplinary proceedings, Hughes falsely claimed that the questions that Robinson submitted for his witnesses were cross-examination questions meant for Privett; falsely claimed that Robinson did not submit a statement; and otherwise ignored evidence and erroneously found Robinson guilty. *See* DE 1 at 4–5. In contrast, the Fifth Amendment claim in *Davis* was brought against a Congressman that terminated an employee on the basis of gender. *Davis*, 99 S .Ct. at 2271–72. Without question, a claim that a federal prisoner's due process rights were violated during the course of disciplinary proceedings is a completely different context from the gender discrimination context presented in *Davis*. *Ziglar*, 137 S. Ct. at 1864 (noting that even a "modest extension" of a prior Supreme Court case constitutes a new context).

Turning to Robinson's Eighth Amendment claims, in *Carlson*, the Supreme Court recognized a *Bivens* cause of action where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment. *Carlson*, 100 S. Ct. at 1470 n.1. However, Robinson's claims against Cima and Asher are based upon allegations of the use of excessive force, which is a completely different context from a claim of deliberate indifference to a prisoner's medical needs. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"); *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022) (federal prisoner's Eighth Amendment "failure to protect" claim presents a new context from the Eighth Amendment deliberate indifference claim in *Carlson*).

Robinson's Eighth Amendment claim against Privett presents a closer question. In his Complaint, Robinson alleges that, although Privett conducted medical checks on Robinson while

he was restrained, these medical checks were "feigned." *See* DE 1 at 2–4.  The correctional officers then proceeded to tighten Robinson's handcuffs and belly chain to "extremely unbearable degrees at the direction of Lt. Asher." *Id.* at 3.  While this claim is, at least, *somewhat* related to Robinson's medical needs, this context is still meaningfully different from the Eighth Amendment claim recognized in *Carlson*.  In *Carlson*, the plaintiff sued individual prison officials, alleging that the officials were deliberately indifferent to the serious medical needs of her son, who suffered an asthma attack and died while incarcerated in a federal prison.  *Carlson*, 100 S. Ct. at 1470 n.1.  As summarized by the Supreme Court:

> More specifically, respondent alleged that petitioners, being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.  The complaint further alleges that Jones' death resulted from these acts and omissions, that petitioners were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

*Id.*

In contrast, in this case, the crux of Robinson's claim against Privett is not that he was denied medical care for a specific serious medical need but rather, that Privett's "feigned" medical checks allowed correctional officers to continue to use excessive force against him while he was restrained.  *See* DE 25 at 6 (explaining that Privett caused Robinson "significant harm by conducting these feigned medical checks and not documenting [his] injuries nor the misconduct by the [correctional officers] involved" and by allegedly falsifying "medical documents claiming restraints were at normal limits and that [he] was in no distress").  In other words, Robinson does not directly allege that Privett deliberately withheld medical treatment for any specific serious

medical need, which was the context of the plaintiff's claim in *Carlson*.  Instead, Robinson's theory is that in feigning these checks, Privett aided and abetted the use of excessive force against him by allowing him to remain in restraints.  *See* DE 1 at 1.  He does not plead or present the Eighth Amendment claim formulated under *Carlson*, not even identifying the supposed qualifying need deliberately untreated.  Again, because even a "modest extension" of a prior Supreme Court case constitutes a new context,  *Ziglar*, 137 S. Ct. at 1864, the Court agrees that Robinson's Eighth Amendment claim against Privett is novel under the first analytical step.

### 3.   Special Factors Counsel Against Extending the *Bivens* Remedy to Robinson's Claims

The Court must therefore proceed to the second step of the analysis to determine whether any special factors counsel hesitation before extending the *Bivens* remedy to these new contexts. *See Ziglar*, 137 S. Ct. at 1857.  Because "the separation of powers should be a guiding light . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress."  *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

Here, there are multiple reasons why a judicially-implied remedy for Robinson's claims is not appropriate.  First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights.  But it has never done so for federal actors.  To the contrary, more recently, Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. . . . So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.  This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. . . . But the Act itself does not provide for a standalone damages remedy against federal jailers.  It could be argued that this

suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 137 S. Ct. at 1865 (citations omitted).

Second, prisoners have several alternative means to vindicate their constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable mechanism to challenge staff misconduct. *See Malesko*, 122 S. Ct. at 523 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring"). This remedy is not considered less effective merely because it is created by regulation rather than statute. *See Egbert*, 142 S. Ct. at 1807 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.") (emphasis added); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress."). Nor is the grievance program considered a less effective remedy because it does not provide the deterrence afforded by damages. *See Schweiker v. Chilicky*, 108 S. Ct. 2460, 2467 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a *Bivens* remedy. *See Callahan*, 965 F.3d at 524; *see also Freedland v. Mattingly*, No. 1:20-cv-00081, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct. *See Hower*, 2022 WL 16578864, at *3. "If there are alternative remedial structures in place, 'that

14

alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Malesko*, 122 S. Ct. at 521 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Robinson's claims is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "'[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources,'" all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id.* (quoting *Turner v. Safley*, 107 S. Ct. 2254, 2259 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,' . . . counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id.* (quoting *Turner*, 107 S. Ct. at 2259).

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743). Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Robinson's Fifth, Sixth, and Eighth Amendment claims, the Court will not do so here. Because *Bivens* does not provide a remedy for Robinson's constitutional claims against Privett, Cima, Asher, and Hughes, the Court must dismiss these claims. *See Elhady*, 18 F.4th at 884 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there.").

### 4.    Alternatively, the *Heck* Doctrine Bars Robinson's Fifth and Sixth Amendment Claims

In *Heck*, the Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must first establish that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a . . . tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 114 S. Ct. at 2372 (footnote omitted). Although *Heck* addressed complaints filed pursuant to 42 U.S.C. § 1983, the Sixth Circuit has extended *Heck* to *Bivens* actions. *See Robinson v. Jones*, 142 F.3d 905, 906–07 (6th Cir. 1998). Moreover, the Supreme Court also expanded *Heck* to a § 1983 action seeking monetary damages for the revocation of the plaintiff's good-time credits under a procedure that the plaintiff claimed violated due process. *Edwards v. Balisok,* 117 S. Ct. 1584, 1589 (1997).

Even if *Bivens* created a remedy for Robinson's Fifth and Sixth Amendment claims, the *Heck* doctrine bars those claims because they necessarily challenge the validity of Robinson's disciplinary conviction, and that conviction has not been overturned.

Despite Robinson's claims that the charges against him were "false," his own allegations establish that he was issued an incident report that charged him with engaging in a sexual act on November 28, 2020, in violation of disciplinary code 205. *See* DE 1 at 2–5. As set forth in the Complaint, this incident report was the subject of the disciplinary hearing against Robinson. *See id.* In support of their Motion to Dismiss, Defendants submit a copy of Robinson's Inmate Discipline Data.[2] *See* DE 21-2 (Exhibit 1: Robin Eads Declaration) ¶ 3, Attachment A: SENTRY

---

[2] While the Court generally evaluates the sufficiency of the complaint with reference only to the face of the complaint itself, *see Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013), the Court may also consider documents attached to the complaint or incorporated into the complaint by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). *See also Bassett v. Nat'l Collegiate*

Report, Inmate Discipline Data.  The Discipline Data reflects that after his DHO hearing, Robinson was found guilty of committing the charged conduct and sanctioned with the loss of twenty-seven days of good conduct time and the loss of several privileges.[3]  *See id.*  The Discipline Data further reflects that these sanctions have not been overturned or expunged, and are still reflected on Robinson's disciplinary record.[4]  *See id.*  Because Robinson's Fifth and Sixth Amendment claims necessarily implicate the validity of his disciplinary conviction–and because he has not obtained a ruling that his disciplinary conviction was invalid–*Heck* bars his claims against Hughes.  This is merely an alternative dismissal basis to the *Egbert* rationale.

---

*Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").  The Court may also consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice."  *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (citation and quotation marks omitted).  Robinson extensively refers to both the incident report and the disciplinary hearing in his Complaint.  *See* DE 1 at 2–5.  Moreover, he did not object to Defendants' submission of his Inmate Discipline Data, nor did he otherwise contest its accuracy with respect to the sanctions imposed or their status.  Because Robinson referenced his disciplinary history throughout his Complaint, and this history was integral to his Fifth and Sixth Amendment claims, the Court may properly consider his Inmate Discipline Data in resolving Defendants' Motion to Dismiss.

[3] In *Muhammad v. Close*, 124 S. Ct. 1303 (2004), the Supreme Court clarified that "*Heck*'s requirement to resort to state litigation and federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."  *Id.* at 1304–05; *see also Peterson v. Johnson*, 714 F.3d 905, 918 (6th Cir. 2013) (explaining that the *Heck/Edwards* rule was not relevant where the plaintiff did not seek relief for any effect that the disciplinary conviction had on good-time credits, nor did anything in the record show that the plaintiff's good-time credits were implicated).  However, here, Robinson does not dispute that he lost good conduct time as a result of his disciplinary conviction, and thus, the *Muhammad* exception does not apply.

[4] Robinson does claim, without real explanation or support, that his disciplinary conviction was "suppose[d] to have been expunged twice," *see* DE 25 at 5, although he does not dispute that it remains on his disciplinary record.

## II.        Rule 12(b)(1) Motion

### A.        Standard

Where a party contends that the factual allegations of a complaint, even if construed as true, fail to establish the court's subject-matter jurisdiction over the plaintiff's claims, that party presents a facial attack upon the court's jurisdiction under Rule of 12(b)(1). *Gentek Bldg. Prods. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A district court assesses the validity of such a motion according to the same approach used to evaluate a Rule 12(b)(6) motion. *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015).

### B.        Robinson's FTCA Claims

Robinson's remaining claim seeks to recover from the United States under the FTCA for the injuries that he claims to have suffered as a result of Asher and Cima's alleged assault of him. *See* DE 1 at 1–3 (alleging assault); DE 12 at 7–8 (construing Robinson's tort claims as against the United States).[5] Defendants argue that the Court should dismiss Robinson's FTCA claims for lack of subject-matter jurisdiction under Rule 12(b)(1) because the alleged conduct falls outside of the scope of Defendants' employment with the BOP. *See* DE 21-1 at 17–19. The tort prism is something of a stretch, given what Robinson pleaded and presented in his FTCA claim. His Complaint here uses the term "assault" but strictly asserts constitutional theories; based on the BOP's FTCA response, he also included only constitutional claims in that submission.[6]

The FTCA is a limited waiver of sovereign immunity that permits an action against the United States for negligent or wrongful acts or omissions by its employees while acting within the

---

[5] While Robinson's Complaint also refers to a negligence claim against the BOP, *see* DE 1 at 2, he does not allege any negligence by any BOP employee; instead, he repeatedly characterizes his tort claims as being related to intentional, criminal acts. *Id.* at 1–3, 7.

[6] And there would be no sovereign immunity waiver as to constitutional violations. See 28 U.S.C. § 2679(b)(2)(A).

scope of their employment.[7]  *See* 28 U.S.C. § 1346(b)(1); *see also United States v. Orleans,* 96 S. Ct. 1971, 1975 (1975); *Fitch v. United States,* 513 F.2d 1013, 1015 (6th Cir.1975).  The FTCA is the exclusive remedy for tort actions against the federal government, its agencies, and its employees, as to conduct within the scope of employment.  *See* 28 U.S.C. § 2679(b)(1).  A waiver of the United States's sovereign immunity, such as the limited waiver provided by the FTCA, is "strictly construed, in terms of its scope, in favor of the sovereign."  *Lane v. Pena*, 116 S. Ct. 2092, 2096 (1996); *see also Stocker v. United States*, 705 F.3d 225, 230 (6th Cir. 2013) ("Under well-established and familiar principles of sovereign immunity, the United States may not be sued without its consent, and the terms of this consent define the jurisdiction of the courts to entertain a suit against the Government.").

"[W]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred."  *L.C. v. United States*, Case No. 5:21-cv-00124-GFVT, 2022 WL 1179400, at *4 (E.D. Ky. Apr. 19, 2022) (citation and quotation marks omitted).  Because the alleged misconduct occurred within the state, Kentucky law provides the relevant metric.  As another Court in this District has explained,

> [u]nder Kentucky law, "the focus is consistently on the purpose or motive of the employee in determining whether he or she was acting within the scope of

---

[7] The United States generally retains immunity for intentional torts, such as claims for assault.  *See* 28 U.S.C § 2680(h).  However, § 1346(b)(1)'s waiver of immunity still applies to enumerated intentional torts, from § 2680(h), committed by "investigative or law enforcement officers."  *See id.*  This means that if a plaintiff raises an assault claim against a law enforcement officer, he may still recover against the United States upon a showing that the officer was "acting within the scope of his . . . employment."  *See* § 1346(b)(1); *See Millbrook v. United States*, 133 S. Ct. 1441, 1446 (2013)("We hold that the waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment[.]").  For purposes of this analysis, the Court assumes that Asher and Cima were law enforcement officers, and therefore, the standard § 1346(b)(1) analysis applies. *See Chapa v. U.S. Dep't of Just.*, 339 F.3d 388, 390 (5th Cir. 2003) ("Thus, as defined in § 2680(h), a BOP official is a federal law enforcement officer.").

employment." *O'Bryan v. Holy See*, 556 F.3d 361, 383 (6th Cir. 2009) (*quoting Papa John's Int'l v. McCoy*, 244 S.W.3d 44, 56 (Ky. 2008)).  An intentional tort committed by the employee may be within the scope of his or her employment if "its purpose, however misguided, is wholly or in part to further the master's business." *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005).  "[T]o be within the scope of employment, the conduct must be of the same general nature as that authorized or incidental to the conduct authorized." *Osborne v. Payne*, 31 S.W.3d 911, 915 (Ky. 2000).

*B.A. v. United States*, Civil Action No. 5:21-106-DCR, 2021 WL 4768248, at *2 (E.D. Ky. Oct. 12, 2021).

Defendants argue that if Asher and Cima assaulted Robinson or used excessive force in restraining him, they were obviously not acting within the scope of their employment with the federal government.  *See* DE 21-1 at 18.  This is because Asher and Cima were not hired to assault or mistreat prisoners, and the alleged conduct is not reasonably expected in view of their duties. *See id.*  Moreover, Defendants maintain that such conduct would not benefit the BOP and contradicts the BOP's mission and policies.  *Id*.  For these reasons, Defendant argue that Robinson's FTCA claims fall outside the purview of the FTCA.  *Id.* at 18–19.

In his Response, Robinson argues that because Asher and Cima were on duty and working their respective job assignments and because they later justified their actions by claiming that Robinson was disruptive, they were acting "under the premise" that they were enforcing BOP policy.  *See* DE 25 at 2–3.  However, he also confusingly characterizes their actions as "criminal" and "prohibited and grossly against BOP policy."  *See id.*  His overall characterization, that the individuals acted criminally and imposed "intentional sadistic malicious physical harm," surely exceeds any reasonable scope definition under § 1346.

Concededly, the force used when a correctional officer attempts to control a non-compliant inmate is more likely to be "of the same general nature as [the conduct] authorized or incidental to the conduct authorized."  *Osborne*, 31 S.W.3d at 915.  Thus, not every use of excessive force by

20

an officer, even when characterized as an assault, will necessarily fall outside the scope of the officer's employment.  However, as noted above, the officer's purpose or motive in engaging in the conduct is critical.  *O'Bryan*, 556 F.3d at 383.  Robinson specifically alleges that Cima and Asher assaulted him in *retaliation* for Privett's false allegations that he engaged in a sexual act, not for any legitimate job-related purpose.  *See* DE 1 at 2.  Such conduct, if true, in no way furthers the BOP's missions or functions.  Allegations that Asher and Cima were on duty at the time of the incident or that they claimed that they justifiably used force against Robinson are also not determinative.  *See* DE 25 at 3.  The question is, assuming as true Robinson's allegations that Asher and Cima intentionally assaulted him without provocation and in retaliation for Privett's accusations, is such conduct within the scope of their employment?  Because it is not, as a matter of law, Robinson's FTCA claims fall outside the statutory waiver, and the Court lacks jurisdiction over those claims against the United States.[8]

Alternatively, that analysis matters if and only if the Complaint actually asserted state tort theories.  Again, close perusal convinces the Court that, although Robinson used words like "assault," they were always in the context of a constitutional excessive force theory.  And again, when specifically asked to identify the state and federal rights at issue, he cited only federal constitutional claims.  *See* Complaint § III.D ("What rights under the Constitution, federal law . . . [or] state law . . . do you allege the Defendant(s) violated:" . . . "My 5th, 6th, and 8th Amendment constitutional rights were violated.").  Thus, for either reason, the Court will not further adjudicate any state assault theory.

For all of these reasons, the Court grants Defendants' Motion to Dismiss in its entirety.

---

[8] Robinson has argued in favor of scope of employment throughout; at no point has Robinson suggested he is attempting to preserve an individual tort action not within § 1346(b).

**<u>Conclusion</u>**

Accordingly, the Court **ORDERS** as follows:

1.      Defendants' Motion to Dismiss (DE 21) is **GRANTED**;

2.      Robinson's Motion for Summary Judgment (DE 23) is **DENIED**;

3.      Robinson's Complaint (DE 1) is **DISMISSED** with prejudice;

4.      The Court will enter an appropriate Judgment; and

5.      This matter is **STRICKEN** from the Court's active docket.

This 21st day of March, 2024.

**Signed By:**

**<u>Robert E. Wier</u>**

**United States District Judge**